# CONOWINGO BRIDGE CO. *vs.* JACOB HEDRICK.

*Injury Caused by Two Concurring Acts of Negligence—Accident on Covered Toll Bridge at Night—Failure to Light the Bridge and the Admission of Bicycle Rider After Foot Passenger Without Notice—Instructions.*

When the negligent acts of two different parties concur in causing an injury to the plaintiff, who was himself without fault, he may maitain an action for damages against either wrongdoer.

When a bridge company fails to light its covered toll bridge at night, and after admitting a foot passenger thereto admits after him a man riding an unlighted bicycle, without warning him of the presence on the bridge of the foot passenger, who has not yet had time to cross, and the latter is run into by the rider, there is sufficient evidence of negligence on the part of the bridge company to take the case to the jury.

Defendant company's toll bridge across a wide river is a wooden structure with a roof and boarded sides, divided by a partition into two passage ways for travellers crossing in opposite directions. The bridge was not lighted at night. Plaintiff early in the evening of the accident for which this action was brought, after buying a ticket from the gate keeper, started across the bridge on foot. A few minutes afterwards the gate keeper admitted to the bridge a man riding a bicycle without a light and did not notify him that plaintiff was immediately ahead. The bridge was in darkness and the bicycle rider ran into plaintiff, causing an injury. *Held,*

1st. That the failure of the defendant to light the bridge is to be considered in connection with all the facts in determining whether the defendant was negligent.

2nd. That the act of the bicycle rider was not the sole case of the injury to plaintiff, and consequently the trial Court properly refused to instruct the jury that the defendant is not liable if the rider went across the bridge at a high rate of speed and in a reckless manner thereby causing the injury, which would not have occurred if the rider had used due care. And that such requested instruction was also erroneous because there was no evidence in the case of fast riding by the bicyclist.

3rd. That the fact that the plaintiff crossed the bridge knowing that it was not lighted, is not, as matter of law, such contributory negligence as precludes recovery.

Appeal from the Circuit Court for Cecil County (PEARCE,

C. J., MARTIN and BROWN, JJ.), where there was a judgment for plaintiff for $1,000.

*Defendant's 3rd Prayer.* If the jury believe from the evidence that the accident complained of by the plaintiff was caused by being run over by the witness Prigg, who was riding over defendant's bridge at a reckless rate of speed or in a reckless manner if the jury so find, then the plaintiff is not entitled to recover in this action, notwithstanding the jury may believe it was dark in defendant's bridge at the time of the accident; unless the jury shall further believe from the evidence that the said Prigg was induced to ride his bicycle at a high rate of speed over the bridge and without care or caution, because he was told by Steward, defendant's toll-gatherer, before he entered upon the bridge that it was clear. (*Refused.*)

*Defendant's 5th Prayer.* If the jury believe from the evidence that Henry Prigg, on the evening of the accident complained of by the plaintiff, rode over defendant's bridge on a bicycle at a high rate of speed and in a reckless manner, and that said high rate of speed and reckless conduct directly caused the accident and that the accident would not have happened, except for said speed and conduct, and shall further find that said high rate of speed and reckless conduct was not occasioned or induced by any act done or words spoken by the defendant or by any of its servants or employees, that then the plaintiff is not entitled to recover, and the verdict of the jury must be for the defendant, even though the jury may further find that it was dark in said bridge at the time of the accident and that there were no artificial lights placed thereon by the defendant. (*Refused.*)

*Defendant's 6th Prayer.* If the jury believe from the evidence that the accident complained of by the plaintiff occurred after sundown on the evening of October 3rd, 1898, but before it was dark and while there was still light enough to distinguish by the exercise of reasonable care, objects in the covered bridge of the defendant, but that the witness Prigg rode

over said bridge on his bicycle in a reckless manner without exercising any care or prudence to observe if any one was on the bridge and that the accident could have been averted by the exercise of reasonable care on the part of said Prigg, then the verdict of the jury must be for the defendant.    (*Refused.*)

The cause was argued before McSHERRY, C. J.,FOWLER, BRISCOE, PAGE, BOYD, SCHMUCKER and JONES, JJ.

*L. M. Haines* and *A. L. Crothers*, for the appellant.

Provided there is proper evidence of negligence to go to the jury on the point, the ultimate inquiry by them is first, was the defendant guilty of negligence in the construction or maintenance of the bridge, and, second, was this negligence the direct and proximate cause of the injury.   Neither of these questions is clearly and explicitly put to the jury by plaintiff's first prayer.   The first is obscured by the recital of particular facts ; and the second if put by the prayer at all can only be arrived at by a course of metaphysical reasoning.   Even under the plaintiff's contention of the law it should have been put to the jury to find that lighting the bridge was necessary to render the same safe and convenient for travelers at night.   It ignores altogether the fact that the company had lanterns at each end of the bridge for the use of travelers, and whether this, in view of the conditions surrounding this bridge, was not all that could be reasonably required.   It does not put to the jury to find that plaintiff's injury was caused by the negro having been admitted to the bridge by defendant on an unlighted bicycle in the darkness, without warning, &c., but assumes that those things caused the injury.   Moreover, the obligation of the company is not correctly stated in the abstract part of this prayer.   It is not, as there stated "to exercise reasonable care that travelers paying said tolls and crossing said bridge should cross safely," but at most that they should exercise care to keep their bridge in such condition that travelers thereon using due care might cross safely.   The difference is not a mere verbal one, but involves a wide ques-

tion as to the actions of others on the bridge and the company's police power and power of supervision over travelers on the bridge.

The case of *Com.* v. *Central Bridge Co.*, 12 Cush. 242, relied on by the plaintiff, was founded in part upon the terms of the charter and is not in harmony with other cases in that State. *Sparhawk* v. *City of Salem*, 1 Allen, 30; *Macomber* v. *City of Taunton*, 100 Mass. 255. This case seems to imply that it was the duty of the traveller to provide himself with a lantern. *Randall* v. *Eastern Railroad Co.*, 106 Mass. 276; *Lyon* v. *City of Cambridge*, 136 Mass. 419; *Canavan* v. *Oil City*, 183 Pa. St. 611.

The liability of turnpike and bridge companies is the same as towns in this respect. They are not common carriers and are liable only for ordinary care. *Angell on Highways*, sec. 8, (3rd ed.) sec. 272; 2 *Sherman & Redfield on Negligence*, sec. 397–401, (4th ed.); *Crigsby* v. *Chappell*, 5 Rich. (Law), 443.

Defendant's 3rd and 5th prayers should have been granted. These prayers present the question to the jury as to whether the injury to plaintiff was caused by the misconduct of Prigg. Not induced by any act of the defendant. It surely cannot be contended that if Prigg was the sole cause of this injury and was not led into it by defendant that plaintiff can recover and yet the Court refused to put this question fairly to the jury. This was especially injurious in view of the frame of the first prayer granted for plaintiff, which does not put to the jury to find that the accident was caused by the acts of defendant therein enumerated and not by the willfulness of Prigg. Where there are other causes than defendant's negligence that might have caused the accident plaintiff must show they did not operate. *Kendall* v. *City of Boston*, 118 Mass. 236; *Co. Com. of Harford Co.* v. *Wise*, 75 Md. 41; *Kidder* v. *Dunstable*, 7 Gray, 103; *Rowell* v. *Lowell*, 7 Gray, 101; *Alger* v. *Lowell*, 3 Allen, 405.

Defendant's 4th and 7th prayers, especially the latter, should have been granted. The prayers proceed on two grounds ;

one, that knowing the conditions and the dangers he assumes the risks ; and the other of his own contributory negligence, which perhaps, is but a branch of the other.    Plaintiff had used this bridge for years and was perfectly familiar with all the conditions of travel over it.    He knew it was dark, that teams and passengers were at any time liable to pass over it, and there is evidence from which the jury might have found that he knew lanterns were kept at the toll houses for the use of travelers passing in the night ; and if he choose to neglect this means of protection against the darkness it was negligence on his part, and he assumed the risks of his course. *Angell on Highways*, sec. 291, (3rd ed.); *Beach on Contributory Negligence*, secs. 37, 247; *Wilson* v. *Charlestown*, 8 Allen, 137; *Murphy* v. *C. & A. R. R. Co.*, 17 Ill. App. 444; *Schoenfield* v. *Milwaukee, &c.*, 74 Wis. 433; *Goldstein* v. *Chicago, &c.*, 46 Wis. 404; *Allen* v. *Johnson*, 76 Mich. 31; *Morrison* v. *Shelby Co.*, 116 Ind. 431.    This is a case of accident on a bridge.    *Miner* v. *Connecticut R. R. Co.*, 153 Mass. 398; *Goddard* v. *McIntosh*, 161 Mass. 253; *Casey* v. *City of Fitchburg*, 162 Mass. 321.    In this case the injured party did not take a light, and she was held to be guilty of such contributory negligence as disentitled her to recover.    *Hill* v. *Tionesta Township*, 146 Pa. St. 15.

*Albert Constable* and *Jas. J. Archer*, for the appellee.

Defendant is a private corporation charging toll for the use of its bridge, and was bound to keep it in a reasonably safe condition.    *Penn. & Ohio Canal Co.* v. *Graham*, 63 Pa. St. 290; *Parnaby* v. *Lancaster Canal Co.*, 11 A. & E., 223.    It is bound to exercise more than ordinary care.    *Washington, &c., Turnpike Co.* v. *Case*, 80 Md. 36.    If artificial lighting is necessary in order to make it reasonably safe, it must be lighted. *Com.* v. *Central Bridge Co.*, 12 Cushing, 243; *Stephani* v. *Manitowoc*, 89 Wisconsin, 467; *Manly* v. *St. Helen's Canal & Ry. Co.*, 2 H. & N. 840; 4 *Am. & Eng. Encyclopedia*, 943, (2d ed.); *Chicago* v. *Powers*, 42 Ill. 169.    If artificial light was necessary in order to make the bridge reasonably safe for

travel at night, and the company, for economy or other motives was unable or unwilling to supply such light, then it was bound to keep its bridge closed to night travel. It could not keep its bridge open for travel and accept toll for its use, refusing at the same time to take the necessary precautions for the reasonable protection of travelers whose money the company was putting in its pocket. *Parnaby* v. *Lancaster Canal Co.*, 11 Adol. & Ellis, 223.

Plaintiff's 2nd, 3rd and 4th prayers only announce the familiar doctrine that where a defendant by its negligence *materially* and *proximately* contributes to produce the injury, the fact that a third party's negligence also contributes, will not defeat a recovery. The only contributing negligence which will defeat a recovery, otherwise established against a defendant, is the contributory negligence of the *plaintiff himself.* That is settled by many authorities. *Paulmier* v. *Erie R. R.*, 5 Vroom, 151, 34 N. J. L.; *Grand Trunk Ry.* v. *Cummings*, 106 U. S., 700; *Elmer* v. *Locke*, 135 Mass. 575; *Clarke* v. *Soule*, 137 Mass. 380; *Stewart* v. *Stringham*, 100 N. Y. 516; *Ellis* v. *N. Y., & C. R. R.*, 95 N. Y. 546, 553; *Kaiser* v. *Flaccus*, 138 Pa. St. 332; *Burrill Township* v. *Uncapher*, 117 Pa. St. 353; *Cowan, Adv.*, v. *Chicago*, 80 Wisconsin, 284.

Defendant's 3rd, 5th and 6th prayers could not have been properly granted, because there was no evidence that the witness, Prigg, rode at "a reckless rate of speed" as each of these prayers asserts. But aside from that objection, the 3rd and 5th prayers assert an incorrect proposition, while whatever was correct in the 6th is contained in the Court's substitute for that prayer. The error of the proposition contained in defendant's 3rd and 5th prayers consists in making Prigg's riding his bicycle against the plaintiff *the sole* proximate cause of the accident. This has been so thoroughly demonstrated in a late case by the Supreme Court that it would be mere waste of time to attempt further elaboration. *Washington & Georgetown R. R.* v. *Hickey*, 166 U. S. 421. See also on this point: *Engelhart* v. *Farrant* (1897), 1 Q. B. 240 (Law Rep.); *McDowell* v. *Great Western Ry.* (1902), 1 K. B. 618; *The*

*Bernina*, 12 Probate Div. 58 (Law Rep.); *Sherman & Redfield on Negligence*, sec. 28 (5th ed).

*Engelhart* v. *Farrant* (1897), 1 Q. B. 240, in the English Court of Appeal, contains an interesting discussion of this question.   In that case the defendant employed a man to drive a cart, with instructions not to leave it, and a lad, who had nothing to do with the driving, to go with the cart and deliver parcels to the customers of the defendant.   The driver left the cart, in which the lad was, and went into a house. Whilst the driver was absent the lad drove on and came into collision with the plaintiff's carriage.   In an action to recover for the damage caused by the collision, the defense was that the defendant was not liable for the act of the lad who *wrongfully* drove the cart during the temporary absence of the driver, and that even if the act of the driver in leaving the cart and going into the house, was negligence, it was not the *effective cause* of the accident.   But the Court held that the negligence of the driver in so leaving the cart was the effective cause of the damage, and that the defendant, consequently, was liable.   Assuming there was evidence of defendant's negligence for the jury, the question whether that negligence was an effective cause of the damage, is a question of fact, not law, and was for the jury.   This is pointed out by the Lord Justices in the English case just cited.

There can be no doubt that there was here ample evidence of defendant's negligence for the jury.   In addition to the absence of any light on the bridge or any substitute provided by the company when, without light or some sufficient substitute, there was a manifest danger to travellers using the bridge at night, we had the fact that this dark and dangerous structure was kept open for travel during the night, and toll charged, without the slightest precaution being taken to prevent a collision either with the bridge itself or with other travellers.   We had also the fact that Stewart, the gatekeeper, sold plaintiff a ticket and opened the gate for him to go across the bridge without giving him any notice of the exceptional conditions in the bridge at the time, namely, that the bridge was shrouded

in impenetrable darkness and that the plaintiff, an old man, was only a few minutes in advance, on foot, in the darkness, with nothing to indicate to the bicycle rider his presence or actual position in the bridge, and this, too, when the gatekeeper knew that the negro was travelling on a bicycle shod with rubber and without a light. Taking toll from the negro bicycle rider, giving him a ticket, and opening the gate for him to go across the bridge, amounted to a statement and notice to Prigg that the bridge was safe for crossing. *Wanless Case*, L. R. 7 Eng. & Irish Appeals, 12; *Roberts* v. *D. &. H. Canal Co.*, 177 Pa. St. 183. And see the powerful observatious of the Supreme Court on this subject in *Washington & Georgetown R. R.*, 166 U. S. at pp. 526, 527.

In regard to the knowledge which the plaintiff had that there was no light on the bridge, and the attempt to make him guilty of contributory negligence because he went upon the bridge having that knowledge, it has been so often decided in this Court that that circumstance would not make him guilty of contributory negligence *as a matter of law*, that we do not find it necessary to enter into such a discussion at this late day. *County Commissioners of Allegany County* v. *Broadwaters*, 69 Md. 553; *Mayor, &c., of Baltimore*, v. *Holmes*, 39 Md. 243.

In regard to defendant's 2nd prayer, we never contended that there was an *absolute* duty on the defendant to light its bridge under all circumstances. Our contention was that the absence of artificial light was a fact to be considered, *together with all the other facts* in determining whether the company had fulfilled its duty, under the particular circumstance of the case, to maintain its bridge in a reasonable safe condition for public travel. That was an absolute duty. Whether artificial lights were necessary to their fulfillment of that duty, was to be decided in view of all the circumstances under which the company has chosen to keep its bridge open, with an invitation thrown out to the public to use it upon the payment of a toll. If it was unsafe and dangerous without artificial light for travellers using it at night, under the circumstances in which

the plaintiff was invited to use it, and if that was known or ought to have been known to the company, the company is liable for any damage hereby sustained. It may not have been obliged to keep its bridge open at night but if the company voluntarily chose to keep it open at such times, and invite travellers to use it, passing the consideration for said use into its private coffers, it cannot reasonably be said to incur no obligation when it is shown to have wilfully neglected to take any reasonable precaution against the dangers necessarily incident to its use under such conditions.

FOWLER, J., delivered the opinion of the Court.

The Conowingo Bridge Company was incorporated by the Act of 1858, chapter 217. By its charter it was authorized to build and maintain a toll-bridge across the Susquehanna river at Conowingo, in Cecil County.

This is an action brought by Jacob Hedrick against the Bridge Company to recover damages for injuries he sustained while walking across the bridge. The case was tried in the Circuit Court for Cecil County before a full bench and a jury. The verdict was for the plaintiff and the defendant has appealed.

The questions presented by the record for our consideration arise upon the exception to the ruling of the Court upon the prayers. No other exception was taken during the trial below.

Defendant's bridge is a wooden, covered structure with a gate at each end. It consists of 10 spans of 100 feet each. The gates are in charge of two gate-keepers who sell tickets and admit travelers to the bridge. On the night or evening the plaintiff was injured, he left his home to go to Baltimore via. the Columbia and Port Deposit Railroad. The station of that road is located at Conowingo, on the Cecil side of the river. He says that he reached the toll-house at dark, bought a ticket from the gate-keeper, Mr. Stewart, and started across the bridge on foot carrying a satchel in his hand. It was so dark in the bridge that it was impossible to distinguish

objects, the openings in the sides affording little or no light. When he got about half-way over he was run down and injured by a man riding a bicycle, who was going in the same direction the plaintiff was walking.

The witness Prigg, the bicycle rider, testified that the gate-keeper told him the way was clear and he got on his wheel aud started across. He says he was not going at a reckless speed, but about five or six miles an hour; that the way he was looking he could have seen in front of him if there had been a light. Mr. Stewart the gate-keeper denied that he had told Prigg the way was clear, but admitted that he gave him no notice that the plaintiff was on the bridge. He and two other witnesses also testified that the evening had not sufficiently advanced to require lights in the toll-house and that it was light enough in the bridge to see objects and persons. It was also in evidence that the defendant furnishes lanterns which are kept at the toll-houses for the use of travelers ; that there was no notice that lanterns would be supplied. It does not appear that a lantern was offered to the plaintiff or that he asked for one.

The plaintiff offered five and the defendant seven prayers.

All the plaintiff's prayers were granted except the first, and in the place of this rejected prayer the Court granted a substitute of its own. The defendant's seven prayers were all rejected ; but the Court granted an instruction of its own as a substitute for the sixth. There does not appear to be any exception to the action of the Court in granting its substitute for defendant's sixth prayer. We will first consider the rulings upon the defendant's prayers.

By its first the defendant asked the Court to take the case from the jury, because there was no legally sufficient evidence of negligence on the part of the defendant or its agents; but we think the record discloses ample evidence—sufficient, certainly, to justify a submission of the case to the jury. In addition to the absence of any light on the bridge, it appears that the gate-keeper sold the witness Prigg, a ticket to cross the bridge without taking any precaution to protect the plain-

tiff in a place which he described as being so dark he could not see his hand before him. However, we do not consider it necessary to elaborate this question, because the defendant's counsel practically abandoned their contention in this respect at the hearing and do not insist upon it in their brief.

Defendant's second prayer asserts the legal proposition that negligence cannot be imputed to the defendant by reason of the absence of artificial lights on the bridge at the time of the injury. But whether the defendant was guilty of a want of reasonable care, that is to say, of negligence, in failing to provide lights is a question for the jury to consider in connection with all the facts of the case. Negligence, in a case like this, it has often been said, "is not so much a question of law as a question of fact, depending for its determination upon a consideration of all the attendant facts and circumstances." *North. Cent. R. W. Co.* v. *Price,* 29 Md. 440.

The third and fifth prayers of the defendant were also properly refused. Both of them undertake to separate the alleged negligence of Prigg in running over the plaintiff, from that of the defendant in failing to light the bridge. They assert the proposition that if the act of Prigg was the *sole* cause of the injury it necessarily follows that the plaintiff cannot recover as against this defendant. The error, however, consists in an effort to segregate the acts of the defendant from those of Prigg when it is apparent they are parts of one transaction. In a case like this, therefore, where there is evidence tending to prove want of care both on the part of the defendant and Prigg, it would only mislead and bewilder the jury to submit to them the question of remote and proximate cause. As was said by CRESWELL, J.: "It seems strange to say that A shall not be responsible for his negligence because B has been negligent likewise, C being the party injured." *The Bernina,* L. R. 12 Prob. Div. 58.

But this question has been so elaborately and ably discussed in the recent case of *Washington & Georgetown R'd* v. *Hickey,* 166 U. S. 522, that we will content ourselves by reference to it and citation from the opinion of the Supreme Court which

was delivered by JUSTICE PECKHAM.  The plaintiff in that case was injured (as was held by the Court) by the joint and concurrent negligence of a driver of a street car and the negligent lowering of the gates at a point where the street car line was crossed by a steam road.  The Court was requested to instruct the jury that if they should find that the commotion and confusion which led to the accident were caused by the negligent lowering of the gates upon the street car, which the driver of that car had no reason to believe would be thus lowered, and if the driver could have crossed in safety but for such lowering, then the street car company was not responsible.  There were other prayers offered by the defendant upon the same theory, namely, that the acts of the driver and those of the gate keeper could be properly separated ; but the Court said : The vice in this contention "consists in the attempted separation into two distinct causes (remote and proximate) of what in reality was one continuous cause.  It leaves out of view the action of the driver as to whether he was or was not negligent, provided the jury should say the accident would not have happened if the gates had not been improperly lowered.  *   *   *   This is an attempt to separate that which, upon the facts in this case, ought not to be separated.  The so-called two negligent acts were, in fact, united in producing the result, and they made one cause of concurring negligence on the part of both companies.  They were in point of time substantially simultaneous acts and parts of one whole transaction, and it would be improper to attempt a separation in the manner asked for by the counsel for the horse car company."  And in the case of *The Bernina* (2) *supra*, LORD ESHER said : "If no fault can be attributed to the plaintiff and there is negligence by the defendant and also by another independent person, both negligences partly directly causing the accident, the plaintiff can maintain an action for all damages occasioned to him against either the defendant or the other wrongdoer."

We think, therefore, these two prayers we have been considering were properly rejected.

Nor do we find any error in the refusal of the fourth and seventh prayers. They ask the Court to instruct the jury that the conduct of the plaintiff in going through the bridge when he knew it was not lighted made him guilty of contributory negligence *as a matter of law.* No doubt it may be properly said that these facts recited in these prayers are evidence to be considered by the jury, but we do not think that the conduct of the plaintiff was so reckless "as would leave no opportunity for difference of opinion as to its imprudence in the minds of ordinarily prudent men." Only such conduct as this on the part of the defendant would have justified the Court in directing a verdict for the defendant. *B. & O. R. R.* v. *Wiley*, 72 Md. 40 and cases there cited. The record shows that the plaintiff was using the bridge as he and others had often used it before, and it would plainly be an invasion of the province of the jury for the Court to say under these circumstances, that he could not recover because of contributory negligence. In *Co. Comrs.* v. *Broadwaters*, 69 Md. 534, it was held that neither the failure to carry a light on a dark night by one acquainted with the road, nor a knowledge of its defective condition is conclusive evidence of contributory negligence.

The sixth prayer was properly rejected, if for no other reason, because it submits to the jury to find that Prigg, was riding his bicycle in a reckless manner. We find no evidence of this in the record. He is the only witness who testifies as to the rate or manner in which he rode and he said he was going at "a good rate of speed, but not at a reckless rate" perhaps "five or six miles an hour" not over seven ; that he "was in no break-neck hurry ; that the way he was looking he could have seen in front if there had been a light, &c."

The third and fifth prayers are open to the same objections in addition to the vice already pointed out. The Court's substitute for the sixth is free from objection.

In conclusion it only remains to refer briefly to the prayers granted at the instance of the plaintiff and the prayer which the Court substituted for the plaintiff's first prayer.

The second, third and fourth prayers are based upon the theory that it is no defense to this action to prove that the negligence of Prigg was partly the direct cause of the injury. What we have said in the former part of this opinion shows that we are of opinion there was no error in granting these prayers. The Court's substitute for the first prayer we think was also properly granted. By it the jury were told that under the circumstances of this case it was the duty of the defendant in building, maintaining and managing · said bridge, to exercise reasonable care that travelers paying tolls should cross the bridge safely. And that if they found that at the time of the injury to the plaintiff the bridge was not lighted by artificial means, and was so dark that it was impossible by the exercise of reasonable care to discern or observe other persons or any objects therein, and that while the plaintiff was walking across the bridge after having purchased a ticket from the · defendant which entitled him to cross, "and while in the exercise of reasonable care on his part, he was run into and injured by a traveler riding on an unlighted bicycle, who had been admitted to said bridge by the gate keeper shortly after the plaintiff had been admitted thereto and without any notice to the rider of the bicycle or knowledge on his part, that the plaintiff was on said bridge, and before reasonable time had been given plaintiff to complete his passage, the plaintiff was entitled to recover—provided the jury shall further find that the defendant was guilty of negligence in not having said bridge lighted at said time, and in admitting said bicycle rider to said bridge as aforesaid, and shall further find that but for said negligence of the defendant the plaintiff would not have been so run into and injured."

The degree of care required of the defendant by this prayer is much lower than the law imposes on it and therefore the defendant cannot complain of it in this respect. In *Washington, &c., Turnpike* v. *Case*, 80 Md. 48, the present CHIEF JUDGE, delivering the opinion of the Court said : "The care and caution which a discreet and prudent individual would exercise if the risk were his own is not the care and caution required of a turnpike road or

a bridge company which charges tolls for the use of its road or bridge. Such a corporation is held to a degree of care closer akin to that exacted of a carrier of passengers. The mere use of ordinary care in repairing a bridge would not exculpate the defendant if it had not by such care made the bridge safe." Having thus instructed the jury that the defendant was bound to exercise reasonable care to provide for the safety of persons using its bridge, the important question was whether the failure to light the bridge in connection with other facts mentioned rendered the defendant guilty of negligence. And this was a question for the jury. In the case of *Com.* v. *Central Bridge Co.*, 12 Cush. 243, the bridge company was indicted for a neglect of public duty in not keeping the bridge in a safe and convenient condition by night as well as day. It was alleged that the unsafe condition of the bridge arose from the fact that there was a failure to keep it lighted at night. In the opinion of the Court delivered by C. J. SHAW, it is said : "Whether light in the night time was necessary to render it (the bridge) safe for all travelers, was a question of fact, and as such was left to the jury. * * * We think this instruction was right." And so it is well settled by this Court that in cases like this negligence *vel non* is a question for the jury. Thus in *N. C. Ry.* v. *Price*, 29 Md. 440, it is said : "It is not, however, the duty of the Court to draw inferences and make deductions from evidence. To do that falls within the well defined province of the jury. * * * Where the facts attending the transaction are at all complex or *unusual* in their character, the existence of negligence must be deduced as an inference from all the facts and circumstances disclosed." And it may be remarked that the prayers approved of in the case just cited leave it to the jury to find whether the injury sued for was caused by "the gross negligence" of the defendant. It seems to us that the substited prayer is free from objection. The only acts of negligence relied on were the failure to light the bridge and the act of the gate keeper in admitting Prigg to the bridge before the plaintiff had time to cross ; and the jury are plainly told they cannot find for the

plaintiff unless they find that it was negligence on the part of defendant in not having the bridge lighted *and* in admitting the bicycle rider as set forth in the prayer.

It follows that the judgment appealed from must be affirmed.

*Judgment affirmed with costs.*

(Decided November 20th, 1902.)